NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0428n.06

No. 15-2428

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

PHYLLIS STALLINGS, )
)
Plaintiff-Appellant, )
)
v. )
)
DETROIT PUBLIC SCHOOLS, )
)
Defendant-Appellee. )
)
)

**FILED**
Jul 28, 2016
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE: SUTTON, GRIFFIN, and DONALD, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff Phyllis Stallings is a former Detroit Public Schools (DPS) teacher. She appeals the district court's grant of summary judgment in favor of DPS on her claim that it failed to accommodate her disability in violation of state and federal law. Because Stallings has not demonstrated that she is qualified for her former position, we affirm.

I.

Plaintiff is "nationally certified . . . to teach early childhood education (ECE)." She began working for DPS in 2002, and spent her career in the school's "ECE program," teaching prekindergarten and kindergarten courses.

Things changed in November 2012 when DPS reassigned Stallings to a fifth grade class. Plaintiff found the change "unbearable." Although Stallings was qualified to teach up to eighth

grade, she had "no experience in the upper grades," lacked familiarity with the curriculum, and questioned whether she possessed "the classroom management skills [necessary] for th[e] age group." Weeks into her new assignment, Stallings aggravated a preexisting osteoarthritic knee condition while breaking up a fight between students. She took a medical leave of absence in mid-December.

Dr. Lawrence Morawa evaluated Stallings' injury and prepared an Americans with Disabilities Act (ADA) "Health Care Provider Certification" on her behalf. On the Certification, Morawa wrote that Stallings "cannot stand longer than a minute" and "must have a sit down job" on the "first floor only." He clarified in a second note that Stallings' "sit down job" should include "no classroom" work. Plaintiff submitted the Certification and the note to DPS, along with a "Request for Accommodations" form she completed personally. Instead of reiterating Morawa's recommendation for a "sit down job" outside the classroom, Stallings stated she "need[ed] a person to assist [her]" with her teaching duties.

DPS initially rejected plaintiff's request for a "no classroom" "sit down job" as inconsistent with the essential job functions of a grade school teacher. It did, however, provide Stallings with a teacher's aide upon her return from medical leave in January 2013. As an alternative to a first-floor classroom, defendant assigned Stallings to a second-floor classroom with elevator access, although Stallings recalled that the elevator did not work.

Three weeks later, for reasons unexplained by the record or the parties, DPS changed its position and moved plaintiff to an administrative job. Stallings worked essentially as a clerical assistant, "copying, collating," and performing data entry. The position involved "no teaching" and "[n]o children," meaning that Stallings "didn't [have to] do anything that required [her] to

stand." Plaintiff remained on "desk duty" until the school year ended in June 2013. She underwent "a total left knee replacement" that same month.

In August, DPS sent plaintiff a "call back letter" directing her to report to an elementary school on the 26th for the start of the new school year. The letter did not assign Stallings a particular grade level, but specified that DPS had confirmed her for a "Teacher position." When she reported to work, plaintiff spoke with DPS's director of compensation and benefits, Todd Faison, and chief of human resources, Gwendolyn de Jongh. Stallings explained she was still recovering from knee surgery and requested "an illness leave, because I'm not trying to get any class work." Faison gave plaintiff a Family Medical Leave Act (FMLA) "illness leave of absence request form," and de Jongh excused her from work.

Stallings returned the completed FMLA form on September 3. Again, however, she provided DPS with conflicting information: Morawa stated on the FMLA form that Stallings required four months' leave, from August 2013 to January 2014. Comparatively, in a second note plaintiff submitted, Morawa represented that Stallings' return date was still "to be determined," while repeating his earlier recommendation: "No classroom—sit down job only!" Complicating matters further, Stallings spent the next several days contacting DPS supervisors requesting *to return to work* as a classroom teacher. Noting that she spent her "entire 10 year career at DPS . . . in the ECE program," plaintiff asked to be excused from her elementary placement and reassigned to a prekindergarten class which, according to Stallings, her "physician w[ould] allow" her to teach.

Defendant denied plaintiff's request for medical leave on September 9. DPS further explained that it could not return Stallings to her "[administrative] placement outside of a classroom" because such an accommodation was beyond the scope of its ADA obligations, but

offered to accommodate Stallings with a teacher's aide and an "assigned first floor classroom." Stallings declined. She interpreted defendant's refusal as an "ultimatum" requiring her to report to work with "no accommodations," lest she face "retire[ment]," "resign[ation]," or "termination from the District." Plaintiff retired the next day. Notifying defendant of her intent to retire, Stallings wrote that DPS's accommodation "determination is in conflict with my surgeon's recommendation. I am unable to fulfill my duties as an effective classroom teacher at this time."

Stallings applied for social security disability benefits eight days after she retired. An administrative law judge ultimately determined that plaintiff was disabled as of June 17, 2013—three months before her retirement—and awarded her benefits.

Stallings subsequently filed the present action alleging that DPS failed to accommodate her in violation of the ADA and Michigan Persons With Disabilities Civil Rights Act (PWDCRA). Defendant moved for summary judgment, arguing in part that plaintiff was not a qualified individual under the ADA. The district court agreed. Recounting the evidence of Stallings' self-professed inability to function in a classroom setting, it stated:

> Not only did Stallings admit she could not perform her job, her treating doctor submitted a disability certificate [stating] . . . "no classroom – sit down job only." He also said [on the FMLA form,] "Pt is totally disabled to function in a classroom at this time." Moreover, Stallings applied for social security disability benefits shortly after her retirement, alleging an onset date of disability of June 17, 2013, and an inability to work then—three months before she retired. Stallings was awarded benefits . . . from the onset date of her disability.
>
> * * *
>
> Whether she was to be in a pre-kindergarten class or a first grade classroom, Stalling[s] was still a classroom teacher. Her doctor said she could not perform this job; her retirement papers said she could not perform this job; her social security application said she could not perform this job beginning in June, 2013.

Finding no genuine issue of material fact on the question of whether plaintiff was qualified, the district court granted defendant's motion. Stallings appeals the judgment.

## II.

We review the district court's grant of summary judgment de novo. *Keith v. Cty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Viewing the evidence in a light most favorable to the nonmovant, our task is to determine "whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The defendant's motion for summary judgment should be granted "when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to her case, and on which she will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alterations omitted)).

The ADA prohibits discrimination against "a qualified individual on the basis of disability," 42 U.S.C. § 12112(a), and defines "discriminat[ion]" to include the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). Michigan's PWDCRA likewise requires employers to accommodate a qualified individual's disability in the absence of undue hardship. *See* Mich. Comp. Laws §§ 37.1202(1)(f)–(g); 37.1210. "[B]oth statutes require *essentially* the same analysis," with differences that are not relevant to this appeal. *Peden v. City of Detroit*, 680 N.W.2d 857, 870 (Mich. 2004); *see also Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 n.3 (6th Cir. 1998). Defendant concedes that plaintiff is disabled. Accordingly, DPS

must reasonably accommodate Stallings so long as she is otherwise qualified for her former position. *EEOC v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015) (en banc). The only issue on appeal is whether plaintiff has made that showing.

A.

"The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The district court concluded that Stallings was not a qualified individual based on plaintiff's statements that she was unable to work as a classroom teacher. We agree that Stallings has not established that she is qualified—albeit on narrower grounds. Specifically, plaintiff's claims are foreclosed by her failure to explain the discrepancy between her application for disability benefits, which declares that she is incapable of working, and the contrary assertion implied in her discrimination claims—that she *is* capable of performing the essential functions of a classroom teacher. *Cleveland*, 526 U.S. at 806–07. Without an explanation resolving this contradiction, plaintiff did not demonstrate that she is "an otherwise qualified individual." 42 U.S.C. § 12112(b)(5)(A); *see also Cleveland*, 526 U.S. at 807. DPS was therefore entitled to summary judgment in its favor.

B.

As proof of Stallings' incapacity to work, the district court cited in part her social security disability benefits, suggesting that an application for benefits necessarily negates an ADA claim. While plaintiff's disability benefits are relevant to the question of whether she is otherwise qualified, the proper analysis is more nuanced.[1]

---

[1] The other evidence the district court relied upon—the statements in Stallings' FMLA form and "retirement [notification] papers," indicated her condition was temporary. The FMLA

"Neither application for nor receipt of social security benefits is by itself conclusive evidence that an individual is completely incapable of working." *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 429 (6th Cir. 2014). Instead, as the Supreme Court explained in *Cleveland*:

> [a]n ADA plaintiff bears the burden of proving that she is a "qualified individual with a disability"—that is, a person "who, with or without reasonable accommodation, can perform the essential functions" of her job. And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case—at least if she does not offer a sufficient explanation. *For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation.*

526 U.S. at 806 (citation omitted, emphasis added). For instance, an ADA plaintiff can survive summary judgment by explaining that he can perform the essential functions of his position with a reasonable accommodation—a consideration the Social Security Administration's (SSA's) disability determination does not take into account. *See, e.g., Olds v. United Parcel Serv., Inc.*, 127 F. App'x 779, 783–84 (6th Cir. 2005); *see also Cleveland*, 526 U.S. at 807.

The only accommodation Stallings identifies on appeal is the four-month leave of absence she requested in the FMLA form. While temporary leave may indeed be a reasonable accommodation in the "appropriate circumstances," *Cehrs*, 155 F.3d at 783, it does not in this instance "explain[] the contradiction" or "resolve the disparity" created by Stallings' later claim

---

form specifically called for four months' leave, and Stallings personally requested temporary leave. In the right circumstances, temporary leave can serve as a reasonable accommodation. *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 782–83 (6th Cir. 1998). Logically, if temporary leave can reasonably accommodate an employee in the performance of her essential functions, that same employee cannot be deemed unqualified to perform her essential functions by virtue of having requested the leave. *See id.* at 782 (rejecting the notion "that an individual who must occasionally request medical leave is unqualified"). Although the district court ultimately reached the right result, insofar as it relied on plaintiff's request for temporary leave to find her unqualified, this was error.

of "total disability." *Cleveland*, 526 U.S. at 806–07. Plaintiff retired on September 10, and applied for disability benefits on September 18. Unlike her FMLA form, Stallings represented to the SSA that her disability was an ongoing condition—one that would prevent her from working well beyond the next four months. The SSA agreed. Its award of benefits signifies a finding that plaintiff was unable to "engage in any substantial gainful activity . . . for a continuous period of not less than 12 months." *Id.* at 801 (quoting 42 U.S.C. § 423(d)(1)(A)). In particular, the ALJ determined that "[t]he demands of [Stallings'] past relevant work" as a classroom teacher "exceed[ed her] residual functional capacity." Yet after filing for benefits, plaintiff sued DPS and alleged just the opposite: that she was able to perform her job requirements as of September 10, or at least that she could have done so if DPS had granted her the four-month leave. "It is incongruous" for plaintiff to claim on September 10 that she could perform her essential job functions with the accommodation of four months' leave, only to claim on the 18th that she would remain incapacitated even with the benefit of that accommodation. *Williams v. London Util. Comm'n*, 375 F.3d 424, 429 (6th Cir. 2004). Plaintiff "cannot create a genuine issue of fact . . . simply by" repeating these same contradictory statements. *Cleveland*, 526 U.S. at 806.

Nor has she shown that four months of leave is reasonable. *See Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010) (the employee is "saddled with the burden of proposing an accommodation and proving that it is reasonable"). Stallings' bare assertion that "a four-month medical leave [is] not excessive" does not make it so, particularly in light of the fact that DPS excused Stallings from teaching the previous semester. *Cf. Cehrs*, 155 F.3d at 783 (finding an issue of fact regarding the reasonableness of unpaid leave where the plaintiff "presented proof that [defendant] routinely granted medical leave to employees," and "had never

requested an extended leave" in the past). Plaintiff complains that DPS failed to engage in the interactive process, but in the absence of an accommodation request that was reasonable, defendant's duty to initiate that process was never triggered. *Ford*, 782 F.3d at 766.

Stallings' request for reassignment to a prekindergarten class likewise did not trigger the interactive process. This could be a reasonable accommodation if Stallings presented evidence that teaching prekindergarten mitigated the impact to her arthritic knee condition. But she did not. Stallings claimed Morawa "will allow [her]" to teach prekindergarten, but Morawa's recommendations specify that she should have "no classroom" work—without exception. *See Jakubowski*, 627 F.3d at 202 (rejecting as unreasonable the plaintiff's proposed accommodation which did "not address a key obstacle preventing him from performing a necessary function" of his position). Plaintiff is not entitled to reassignment merely because prekindergarten is more consistent with her professional expertise. The ADA affords Stallings only a reasonable accommodation—not the accommodation of her choice. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004).[2]

In lieu of a sufficient explanation for her benefits claim, plaintiff argues for the first time on appeal that the district court erred in granting defendant summary judgment "to the extent that it did so based on unsworn evidence." Even if this issue was properly before us (and it is not), *see McFarland v. Henderson*, 307 F.3d 402, 407 (6th Cir. 2002), it does nothing to change the result under *Cleveland*. Stallings agrees that evidence of her "eventual claim" for disability

---

[2]Moreover, defendant did engage in the interactive process. It offered plaintiff the counter accommodation of a first-floor classroom with a teacher's aide—which was more than reasonable. *See Belasco v. Warrensville Heights City Sch. Dist.*, 634 F. App'x 507, 516 (6th Cir. 2015) ("the ADA does not require employers to hire a second person" such as a teacher's aide, "to fulfill the job responsibilities ordinarily performed by one person"). Once "an employer takes that step . . . the employee cannot demand a different accommodation." *Jakubowski*, 627 F.3d at 203.

benefits was admissible, as was her deposition testimony, wherein she affirmed that the ALJ awarded her benefits based on her claim that she could not work as a teacher. And plaintiff has failed to reconcile that earlier representation with the assertion she makes here: that she can perform the essential functions of that position. Accordingly, she has not created a genuine issue of fact as to whether she is a qualified individual. *Cleveland*, 526 U.S. at 806. Therefore the district court correctly granted summary judgment in favor of DPS.

III.

For these reasons, we affirm the judgment of the district court.