# IN THE SUPREME COURT OF TEXAS

No. 19-0658

TEXAS DEPARTMENT OF TRANSPORTATION, PETITIONER,

v.

ALBERT LARA, JR., RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

**Argued December 1, 2020**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

Petitioner Texas Department of Transportation (TxDOT) terminated respondent Albert

Lara, Jr.'s employment after he exhausted his five months of sick leave while recovering from

surgery. Lara sued under the Texas Commission on Human Rights Act (TCHRA),[1] alleging in part

that TxDOT (1) failed to reasonably accommodate his disability by granting him additional leave

without pay in accordance with its policy, in violation of Section 21.128;[2] and (2) discharged him

in retaliation for his request for additional leave, in violation of Section 21.055.[3] On the record

presented, we hold that Lara's accommodation claim is viable and that Lara's leave request did

---

[1] TEX. LAB. CODE ch. 21.

[2] *Id.* § 21.128.

[3] *Id.* § 21.055.

not oppose a discriminatory practice, as required for a retaliation claim. Accordingly, we affirm the court of appeals' judgment on those claims.[4] We disagree with the court of appeals that Lara did not plead a disability-discrimination claim under Section 21.051[5] and remand to the court of appeals to adjudicate TxDOT's challenge to the trial court's denial of its motion to dismiss that claim.

## I

## A

TxDOT is a large state agency with some 11,000 employees. For 21 years, Lara worked as a general engineering technician—informally referred to as an inspector—in TxDOT's Milam County office, located in its Bryan District. Lara oversaw TxDOT contracts for maintenance activities such as litter removal, landscaping, and guardrail repair, and he personally inspected the contractors' work in the field. These inspections sometimes required Lara to stoop, crawl, or move heavy loads.

In April 2015, Lara fell ill with stomach issues and was hospitalized. On May 7, he had surgery on his colon, intestine, and bladder. Lara was discharged from the hospital a few days later to recover at home, but the surgery left him with an incision that needed to heal, a colostomy bag, a catheter, and drains.

Lara exhausted his vacation and personal sick leave early on. In mid-May, Lara submitted forms to TxDOT requesting benefits under the federal Family Medical Leave Act (FMLA) and the

---

[4] 577 S.W.3d 641, 652 (Tex. App.—Austin 2019).

[5] TEX. LAB. CODE § 21.051.

2

state employees' sick-leave pool.[6] TxDOT's sick-leave-pool certification form includes several questions directed to the employee's healthcare provider. In response to questions asking the provider's "best estimate" of when Lara would be "able to perform the essential functions of [his] position" and do so "[w]ithout restrictions", Lara's physician answered June 23. Another question asked whether Lara's health issues amounted to a "catastrophic condition", which the form defined as an illness or injury that is likely to cause incapacitation for at least 12 weeks. Lara's physician checked "no". That made Lara initially ineligible to draw from the sick-leave pool,[7] though he was approved for unpaid leave under the FMLA.

Lara and his physician submitted forms to TxDOT to extend his leave twice more. The first extension request was submitted on June 15, eight days before Lara was scheduled to return to work. This time Lara's physician gave July 21 as his best estimate of the date that Lara could return without restrictions. In response to a question on the FMLA form asking the probable duration of Lara's condition, Lara's physician wrote "6 months from date of surgery". The June 15 forms also included the physician's handwritten notes explaining that Lara had a surgical wound limiting his physical abilities that would need to heal before Lara could return to work. Additionally, Lara would need another surgery in November to reverse the colostomy. Because the June forms reflected that Lara's health issues qualified as catastrophic, Lara was granted paid leave from the sick-leave pool.

On July 15, Lara submitted a second leave-extension request that stated a new estimated return date of October 21. Lara's physician stated in the form that Lara would remain incapacitated

---

[6] *See* TEX. GOV'T CODE §§ 661.001–.008.

[7] *See id.* § 661.006(a) ("An employee may not withdraw time from the sick leave pool except in the case of catastrophic illness or injury of the employee or the employee's immediate family.").

through November and would need surgery to reverse the colostomy after that. TxDOT granted Lara additional paid leave from the sick-leave pool through September 16, the maximum available to him under state law. On September 9, TxDOT wrote Lara that he would be "administratively separated" from the agency effective September 16 so that the agency could hire a full-time employee to perform his job duties.

**B**

Lara concedes that at the time of his termination, no more paid leave was available to him. But TxDOT has a leave without pay (LWOP) policy. Under that policy, an employee suffering from illness or injury can receive up to one year of unpaid leave after his paid leave expires. The policy states that LWOP is discretionary but that an employee's supervisor "must grant" LWOP if the employee "requires [it] as a reasonable accommodation for a disability". The policy states that LWOP status "represents a guarantee of employment for a specific, agreed-upon period of time . . . but not necessarily for the same job held by the employee when placed on LWOP." The policy explains that TxDOT may need to fill the employee's position if doing so would "serve[] the best business interests of the department", but once the employee is able to return to work, the employee will be offered the first available position for which the employee is qualified. The last page of the policy instructs an employee requesting LWOP to "[w]rite a memo to their supervisor stating . . . the reason(s) the employee needs to take LWOP, and . . . the estimated date the employee plans to return to work" and to "[c]omplete any additional forms or provide other documentation and information as may be required by their HR personnel."

TxDOT wrote Lara on July 10 that if he were unable to return to work on his then-expected return date of July 20, he should return the attached forms updating the agency on his status. The

letter also advised Lara that he "may be eligible" for LWOP but that "[i]n order to be placed on LWOP status, [Lara] must request [it]". The attachments to the letter included the LWOP policy. Lara never submitted a memo requesting to be placed on LWOP, as the policy instructs.

Still, Lara contends that between May and August he consistently pressed for accommodations to keep his job. Lara testified by deposition that shortly after his discharge from the hospital, his supervisor, Brad Powell, visited him at his home. Still recovering, Lara emphasized his desire to keep his job and asked Powell about the possibility of light duty. According to Lara, Powell responded by urging Lara to keep his medical paperwork up to date. Lara also claims that between May and September he was "constantly calling" Powell and others to ask what he needed to do to remain employed. In an affidavit attached to his summary judgment response, Lara stated that on August 18 he spoke to office manager Jennifer Trowbridge and assistant supervisor Robert Talafuse to request LWOP. According to Lara, they told him that Bryan district engineer Lance Simmons would decide whether Lara qualified. In a September 1 meeting with human resources, Simmons decided that Lara should be terminated. He signed Lara's termination letter on September 9.

C

Lara sued TxDOT under the TCHRA for disability discrimination "includ[ing], without limitation, TxDOT's failure to engage in the interactive process; failure to provide a reasonable accommodation to Lara, including but not limited to, extended medical leave, leave without pay (LWOP), transfer to a vacant TxDOT position for which he was qualified; and termination of Lara's employment." Lara's petition cites Section 21.051, which provides that "[a]n employer commits an unlawful employment practice if because of . . . disability . . . the

5

employer . . . discharges an individual, or discriminates in any other manner against an individual in connection with . . . the terms, conditions, or privileges of employment".[8] Lara also sued TxDOT for retaliating against him "for making a request for a reasonable accommodation . . . includ[ing], without limitation, . . . refus[ing] to provide[] extended medical leave or LWOP". Section 21.055 makes it an unlawful employment practice if an employer "retaliates or discriminates against a person who . . . opposes a discriminatory practice[,] . . . files a complaint[,] . . . or participates in any manner in an investigation".[9]

TxDOT filed a combined plea to the jurisdiction and motion for summary judgment based on sovereign immunity, which for ease of reference we will refer to as a motion to dismiss. The trial court denied the motion without explanation in a brief order.

A divided panel of the court of appeals affirmed in part and reversed and rendered in part.[10] Section 21.128(a) makes it unlawful for an employer to "fail or refuse to make a reasonable workplace accommodation to a known physical . . . limitation of an otherwise qualified individual with a disability who is an employee . . . unless the [employer] demonstrates that the accommodation would impose an undue hardship on the operation of [its] business".[11] The panel majority concluded that Lara had raised fact issues on the elements on which he had the burden of proof—that he was qualified and had requested a reasonable accommodation—and to overcome TxDOT's affirmative defense of undue hardship.[12] The dissenting justice adopted TxDOT's view

---

[8] TEX. LAB. CODE § 21.051.

[9] *Id.* § 21.055(3)–(4).

[10] 577 S.W.3d 641, 652 (Tex. App.—Austin 2019) (2–1).

[11] TEX. LAB. CODE § 21.128(a).

[12] 577 S.W.3d at 647–649.

6

that Lara had essentially requested indefinite leave, which is not a reasonable accommodation.[13] Although the parties had briefed two disability-discrimination theories (discrimination by termination under Section 21.051 and discrimination by failure to accommodate under Section 21.128), the panel read Lara's pleadings as asserting only the latter.[14]

The panel unanimously concluded that the trial court should have dismissed Lara's retaliation claim under Section 21.055 because Lara had not, before he was terminated, engaged in a protected activity by opposing a discriminatory practice, making a complaint, or participating in an investigation.[15] Because Lara did not file a discrimination complaint with the Texas Workforce Commission until after he was terminated, the court reasoned that the complaint could not have caused Lara's termination.[16] Relying on federal-court decisions interpreting the Americans with Disabilities Act (ADA) and caselaw from another Texas court of appeals, Lara argued that his request for LWOP or another accommodation qualified as a protected activity under Section 21.055. The court rejected this argument because of differences in language between the ADA and Section 21.055 and because it determined that the four-month delay between Lara's first request for leave and his termination broke any causal link between the two.[17]

We granted both parties' petitions for review.

---

[13] *Id.* at 653 (Rose, C.J., concurring in part and dissenting in part).

[14] *Id.* at 647 n.1 (majority opinion).

[15] *Id.* at 649–651; *id.* at 652–653 (Rose, C.J., concurring in part and dissenting in part).

[16] *Id.* at 650 (majority opinion).

[17] *Id.* at 651–652.

## II

"The TCHRA waives immunity, but only when the plaintiff states a claim for conduct that actually violates the statute."[18] To prevail on a claim of immunity, the governmental defendant may "challenge[] whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case", "the *existence* of those very jurisdictional facts", or both.[19] Where the defendant challenges the existence of jurisdictional facts, as TxDOT did here in its motion to dismiss, the court "must move beyond the pleadings and consider evidence".[20] The analysis then "mirrors that of a traditional summary judgment".[21]

Lara thus had the burden to "raise at least a genuine issue of material fact" on each element of his claims.[22] To determine whether he met that burden, "we must take as true all evidence favorable to [him], indulging every reasonable inference and resolving any doubts in [his] favor."[23]

The express purposes of the TCHRA include "provid[ing] for the execution of the policies" of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) and Title I of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*).[24] Accordingly, "we have consistently

---

[18] *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018).

[19] *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *see also Alamo Heights*, 544 S.W.3d at 770 ("A jurisdictional plea may challenge the pleadings, the existence of jurisdictional facts, or both.").

[20] *Alamo Heights*, 544 S.W.3d at 770.

[21] *Garcia*, 372 S.W.3d at 635.

[22] *Alamo Heights*, 544 S.W.3d at 771; *see Garcia*, 372 S.W.3d at 635 ("[T]he plaintiff is then required to show that a disputed material fact exists regarding the jurisdictional issue.").

[23] *Alamo Heights*, 544 S.W.3d at 771.

[24] TEX. LAB. CODE § 21.001(1), (3).

held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA."[25]

## III

TxDOT argues that the trial court should have dismissed Lara's claim for discrimination under Section 21.128(a). Under that section, "[i]t is an unlawful employment practice" for an employer "to fail or refuse to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified individual with a disability who is an employee", unless the employer "demonstrates that the accommodation would impose an undue hardship on the operation of [its] business".[26] There is nearly identical language in the ADA. Section 12112(a) prohibits discrimination "against a qualified individual on the basis of disability", and § 12112(b)(5)(A) defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business".[27] Paraphrased and reordered, TxDOT's arguments here are that (1) there is no evidence that Lara requested LWOP; and (2) any request Lara made "was effectively for indefinite leave",[28] which either would render Lara unqualified or would not be a reasonable accommodation as a matter of law.

---

[25] *Garcia*, 372 S.W.3d at 634.

[26] TEX. LAB. CODE § 21.128(a).

[27] 42 U.S.C. § 12112(a), (b)(5)(A).

[28] Br. on the Merits for Pet'r TxDOT 24.

**A**

We agree with the court of appeals that TxDOT's first argument "is belied by the record."[29] TxDOT points out that Lara did not submit a memo to his supervisor, as the LWOP policy instructs. But the federal authorities to which we look for guidance in interpreting the TCHRA make clear that a request for an accommodation need not be formal and that allowing employers to impose fine-print requirements for requesting an accommodation would subvert the TCHRA's purpose.

A guidance document on the interpretation of federal discrimination laws issued by the U.S. Equal Employment Opportunity Commission states that to make an accommodation request, an employee need only "let the employer know that [the employee] needs an adjustment or change at work for a reason related to medical condition."[30] The request need not be in writing and need not mention discrimination laws or use the words "reasonable accommodation". The request can be made "in conversation" and with "plain English". The guidance document lists several examples of what a real-world request for accommodation might look like. Example B states: "An employee tells his supervisor, 'I need six weeks off to get treatment for a back problem.'"

The federal caselaw is consistent with this approach. The U.S. Court of Appeals for the Fifth Circuit has cited to and parroted the lenient standard set out in the EEOC Guidance[31] while

---

[29] 577 S.W.3d 641, 647 (Tex. App.—Austin 2019).

[30] U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, EEOC-CVG-2003-1, ENFORCEMENT GUIDANCE ON REASONABLE ACCOMMODATION AND UNDUE HARDSHIP UNDER THE ADA (2002) [hereinafter EEOC REASONABLE ACCOMMODATION GUIDANCE], https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada#requesting.

[31] For instance, the Fifth Circuit explained in *EEOC v. Chevron Phillips Chemical Co.* that:

An employee who needs an accommodation because of a disability has the responsibility of informing her employer. The employee must explain that the adjustment in working conditions or

explaining that "once the employee presents a request for an accommodation, the employer is required to engage in the interactive process so that *together* they can determine what reasonable accommodations might be available."[32] The Third Circuit has likewise rejected the imposition of formalistic requirements on the plaintiff:

> What matters under the ADA are not formalisms about the manner of the request, but whether the employee or a representative for the employee provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation.[33]

Applying the lenient standard articulated by the federal authorities, "tak[ing] as true all evidence favorable to" Lara, and "indulging every reasonable inference and resolving any doubts in [his] favor",[34] we conclude that a reasonable jury could find that Lara requested LWOP before he was terminated. Specifically, Lara testified by deposition that between the time of his hospitalization and his termination, he was "constantly calling" his supervisor, Brad Powell, and others to communicate his desire to remain employed when his FMLA and sick leave expired. Lara further testified about an August 18 telephone conversation with office manager Trowbridge and assistant supervisor Talafuse in which LWOP was specifically discussed. And it is undisputed that Lara kept TxDOT apprised of the status of his recovery and projected return through submission of FMLA and sick-leave forms. The cases cited by TxDOT are factually

---

duties she is seeking is for a medical condition-related reason, but the employee does not have to mention the ADA or use the phrase 'reasonable accommodation.' Plain English will suffice.

570 F.3d 606, 621 (5th Cir. 2009) (citing EEOC REASONABLE ACCOMMODATION GUIDANCE, *supra* note 30) (additional citation omitted).

[32] *Id.* at 621–622.

[33] *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999).

[34] *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018).

distinguishable and cannot support a conclusion that Lara failed to request an accommodation as a matter of law in light of the evidence here.[35]

B

TxDOT's primary argument is that granting Lara LWOP under the circumstances would have rendered Lara unqualified or would not have been a reasonable accommodation as a matter of law. In a case like this one where employee leave is at issue, these arguments are two sides of the same coin.

TxDOT reasons that because Lara's physician had already pushed Lara's return date back multiple times and indicated that Lara would still need colostomy-removal surgery in the future, "Lara's request was effectively for indefinite leave."[36] TxDOT frames the legal issue as whether it was obligated to hold Lara's job open until he was fully recovered, regardless of how long that took.[37] It then points to affidavit testimony by Bryan district engineer Lance Simmons that Lara was the only inspector assigned to the Milam County office and that continuing to reassign other inspectors in the Bryan district to cover Lara's duties would put an untenable strain on the

---

[35] *See Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999) (affirming summary judgment for the City where "the record [did] not offer a single example of" the firefighter plaintiff's having "ask[ed] the City to transfer him to a specific light-duty job" or offering any evidence "implying that he wanted one"); *Hester v. Williamson County*, No. A-12-CV-190-LY, 2013 WL 4482918, at *3, 7 (W.D. Tex. Aug. 21, 2013) (plaintiff mechanic, who suffered complications from diabetes, was terminated after exhausting all of his paid and unpaid leave and "the Court [could not] find in the record any evidence" that plaintiff had requested an accommodation); *Thornburg v. Frac Tech Servs., Ltd.*, 709 F. Supp. 2d 1166, 1172 (E.D. Okla. 2010) ("It should first be noted that evidence has not been presented to show Plaintiff ever requested an accommodation from Defendant."); *LeBlanc v. Lamar St. Coll.*, 232 S.W.3d 294, 300–302 (Tex. App.—Beaumont 2007, no pet.) (affirming summary judgment for the defendant where the evidence conclusively showed that the plaintiff was not qualified for a job requiring the ability to tutor math and English students, and the plaintiff had "made no suggestions regarding how the school could accommodate her deficiencies in math and English").

[36] Br. on the Merits for Pet'r TxDOT 24.

[37] *Id.* at 22 ("Holding [Lara's] job open until he could finally return was not a reasonable accommodation . . . ."); Reply Br. on the Merits for Pet'r TxDOT 10 ("TxDOT was not obligated to hold [Lara's] job open for nearly six months while he healed from surgery, even assuming he could have returned on October 21.").

12

Department. Simmons testified that he needed to hire a full-time inspector to cover Lara's job but could not do so as long as the position was formally occupied.

TxDOT does not argue that leave can never be a reasonable accommodation under the TCHRA. Nor could it. Yet it urges the Court to adopt a bright-line rule that several months' leave is never reasonable. TxDOT points to federal decisions it characterizes as concluding that even a few months' leave is an unreasonable accommodation. But a closer inspection reveals that most of these cases are factually distinguishable.[38] Federal courts have also recognized that whether leave is a reasonable accommodation "turns on the facts of the case"[39] and that the reasonable-accommodation inquiry is "ill-served by per se rules or stereotypes."[40]

TxDOT relies heavily on *Hwang v. Kansas State University*, in which the Tenth Circuit opined that a six-month leave of absence would almost always be unreasonable.[41] We do not think

---

[38] For example, in *Byrne v. Avon Products, Inc.*, a night-shift employee named Byrne was fired after being caught sleeping on the job. 328 F.3d 379, 380 (7th Cir. 2003). He turned out to have major depression. After two months of treatment, Byrne was fit to resume working, but Avon would not take him back. Byrne's suit for discrimination under the ADA failed on summary judgment and on appeal. According to the court of appeals, Byrne "contend[ed] that he should have been accommodated by being allowed *not* to work", and "his only proposed accommodation [was] not working for an extended period of time". *Id.* at 380–381. The court explained that "[a]n inability to work for a multi-month period removes a person from the class protected by the ADA", *id.*, but the context in which the statement was made is a far cry from this case. Here, TxDOT was aware of Lara's medical condition from its inception and had a written policy that provided for accommodation.

Another example is *Stallings v. Detroit Public Schools*, 658 F. App'x 221 (6th Cir. 2016). Stallings was forced to retire after a debilitating knee condition left her unable to teach in the classroom. In her subsequent lawsuit, Stallings claimed that the school district should have accommodated her with four months of leave, but she had acknowledged in her resignation letter and application for federal disability benefits that she was totally disabled and that the disability was expected to last much longer than four months. *Id.* at 222–226. The court of appeals affirmed the district court's grant of summary judgment for the school district. *Id.* at 227. Here, by contrast, there is evidence that Lara requested LWOP for just five weeks after the expiration of his paid benefits under a policy that provided for LWOP for up to a year.

[39] *Criado v. IBM Corp.*, 145 F.3d 437, 443 (1st Cir. 1998).

[40] *García-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 650 (1st Cir. 2000).

[41] 753 F.3d 1159, 1161 (10th Cir. 2014) ("Must an employer allow employees more than six months' sick leave or face liability under the Rehabilitation Act? Unsurprisingly, the answer is almost always no.").

13

*Hwang* helps TxDOT here. Plaintiff Hwang had a one-year contract with Kansas State to teach classes in the fall, spring, and summer semesters. Before the start of the fall semester, Hwang was diagnosed with cancer and obtained leave to receive treatment under a university policy providing for six months of paid sick leave. When the six months expired and Hwang was unable to resume teaching, Kansas State refused to allow her additional leave, "explaining that it had an inflexible policy allowing no more than six months' sick leave."[42] The district court dismissed Hwang's discrimination claim under the federal Rehabilitation Act, and the Tenth Circuit affirmed.[43] Hwang complained about the university's sick-leave policy being inflexible, but the court explained that "an inflexible leave policy can serve to protect rather than threaten the rights of the disabled—by ensuring disabled employees' leave requests aren't secretly singled out for discriminatory treatment, as can happen in a leave system with fewer rules, more discretion, and less transparency."[44] In sum, the university had protected itself by having a clear, uniformly applied policy.

Another Tenth Circuit case, *Rascon v. U S West Communications, Inc.*, provides a counterpoint to *Hwang*.[45] There, plaintiff Rascon, a Vietnam veteran, requested leave from his job as a network technician at U S West to attend an inpatient treatment program for posttraumatic stress disorder. Rascon informed his supervisor that the treatment program would last approximately four months and requested paid leave under U S West's disability plan, but he was

---

[42] *Id.*

[43] *Id.* at 1165.

[44] *Id.* at 1164.

[45] 143 F.3d 1324 (10th Cir. 1998), *abrogated on other grounds by New Hampshire v. Maine*, 532 U.S. 742 (2001).

granted only unpaid leave in 30-day increments and only on the condition that his doctors supply certain information. Rascon was terminated before his discharge from treatment. After a bench trial, the district court rendered judgment for Rascon on his claim for disability discrimination under the ADA.[46]

On appeal, U S West challenged the district court's conclusion that the leave of absence Rascon requested was reasonable. The Tenth Circuit rejected this argument. To start, the court explained that although U S West "frame[d] the issue as whether *attendance* is an essential function of Mr. Rascon's job", "[t]hat simply is not the relevant inquiry when a reasonable accommodation of disability *leave* is at issue."[47] Rather, when leave is the requested accommodation, "the question whether attendance is an essential [job] function is equivalent to the question of what kind of leave policy the company has."[48] The court also rejected U S West's argument that granting Rascon the time off had caused the company undue hardship, reasoning in part that U S West "was not following its own policies", which provided for more generous leave options, including paid disability leave for a year, unpaid disability leave for 6 months, and unpaid personal leave for a year.[49]

This case is more like *Rascon* than *Hwang*. TxDOT's LWOP policy authorizes an employee who has already exhausted his paid leave to request LWOP "for up to 12 months" for illness or injury and states that TxDOT "must grant" the employee's request if the employee

---

[46] *Id.* at 1326.

[47] *Id.* at 1333.

[48] *Id.*

[49] *Id.* at 1334–1335.

15

"requires LWOP as a reasonable accommodation for a disability". TxDOT's merits brief includes an express concession that "Lara had a disability", at least "for purposes of this appeal."[50]

The policy also makes clear that granting an employee LWOP and filling the employee's position are not mutually exclusive choices. The policy states that while LWOP is "a guarantee of employment for a specific, agreed-upon period of time", the guarantee is "not necessarily for the same job held by the employee when placed on LWOP." The policy expressly contemplates that TxDOT may need to hire another person to do the employee's job and states that TxDOT will do so if TxDOT "believes it serves the best business interests of the department". In the event that an employee's position is filled when he is able to return to work, he "will be offered the first available nonposted position" for which he is qualified that is in his region and that pays "no more than two salary groups lower than [his] previous position".

TxDOT takes pains to avoid acknowledging the policy. When it does, it claims that the policy gives it unfettered discretion to grant or deny LWOP—a reading that is incompatible with the policy's text. At oral argument, TxDOT also argued that the policy is relevant only to the affirmative defense of undue hardship, which it has not pursued in this Court,[51] and that the policy is not relevant to the issue whether Lara's request for LWOP was reasonable. We disagree. The

---

[50] Br. on the Merits for Pet'r TxDOT 13 n.3 ("While TxDOT may challenge whether Lara's condition amounted to a disability, should this case proceed to trial, TxDOT assumes Lara had a disability for purposes of this appeal.").

[51] TxDOT did argue undue hardship in the lower courts. *See* TEX. LAB. CODE § 21.128(b) ("[U]ndue hardship . . . is a defense to a complaint of discrimination made by an otherwise qualified individual with a disability. . . . [T]he commission shall consider the reasonableness of the cost of any necessary workplace accommodation and the availability of alternatives or other appropriate relief."). The court of appeals concluded that Lara had raised a fact issue to defeat the defense. 577 S.W.3d 641, 649 (Tex. App.—Austin 2019). TxDOT has not challenged that holding here. *See* Reply Br. on the Merits for Pet'r TxDOT 12 n.4.

16

reasonableness of an employee's request for leave depends on the circumstances presented, and one of the circumstances present here is TxDOT's written LWOP policy.

TxDOT's refrain that Lara had effectively requested indefinite leave is also undermined by the evidence that the last form submitted by Lara's physician stated an anticipated return date of October 21, just five weeks after Lara's termination became effective on September 16. Moreover, when Lara was fired, there was no indication that he would not return on time other than the physician's note that Lara would need an additional surgery in the future. Lara testified by affidavit that at the time of his termination, there were about 20 inspectors total in the Bryan district as well as a number of additional employees who were capable of performing inspections, and it was common practice for inspectors to travel within the district to cover one another's territories as needed, even if that need lasted for months.

We agree with TxDOT that indefinite leave is not a reasonable accommodation, but Lara's evidence that his request was not for indefinite leave is sufficient to defeat TxDOT's motion to dismiss his claim for discrimination by failure to accommodate under Section 21.128(a) of the TCHRA. The court of appeals correctly affirmed the trial court's denial of TxDOT's motion to dismiss Lara's failure-to-accommodate claim under Section 21.128(a).

## IV

Lara challenges the court of appeals' judgment dismissing his retaliation claim under Section 21.055. That section provides that "[a]n employer . . . commits an unlawful employment practice if the employer . . . retaliates or discriminates against a person who . . . opposes a discriminatory practice[,] makes or files a charge[,] . . . or participates in any manner in an

17

investigation".[52] "If the employee can establish a prima facie case of [retaliation], a rebuttable presumption of [retaliation] arises".[53] "But when the prima facie case is rebutted, there is no presumption and thus no evidence of illegal intent."[54] Accordingly, Lara's claim can survive TxDOT's motion to dismiss only if he has established a prima facie case of retaliation.

"To establish a prima facie case of retaliation, an employee must show: (1) [he] engaged in an activity protected by the TCHRA, (2) [he] experienced a material adverse employment action, and (3) a causal link exists between the protected activity and the adverse action."[55] "In . . . retaliation cases under the TCHRA," as in discrimination cases, "Texas jurisprudence parallels federal cases construing and applying equivalent federal statutes, like Title VII."[56] Lara argues that he opposed a discriminatory practice by requesting LWOP or light duty as an accommodation.

The federal analogue relevant here is § 12203 of the ADA. Subsection (a) of the federal statute is practically identical to Section 21.055, but subsection (b) is much broader:

(a)     Retaliation

*No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter* or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

---

[52] TEX. LAB. CODE § 21.055.

[53] *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 782 (Tex. 2018).

[54] *Id.* at 785.

[55] *Id.* at 782.

[56] *Id.* at 781.

(b)       Interference, coercion, or intimidation

*It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of*, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, *any right granted or protected by this chapter.*[57]

The court of appeals concluded that Lara's retaliation claim should be dismissed for two reasons. First, focusing on statutory differences between Section 21.055 and ADA § 12203, the court reasoned that although an accommodation request may be sufficient to invoke the protection of the ADA's retaliation provision—accommodation is a "right granted or protected by this chapter" under § 12203(b)—it is not opposition to a discriminatory practice under Texas' narrower statute.[58] Second, the court concluded that Lara had not produced evidence of a causal link between his request for accommodation and subsequent termination.[59] We agree with the court of appeals that Lara cannot make a prima facie case of retaliation. We need only address the first element.

The court of appeals suggested that an accommodation request does not qualify as opposition to a discriminatory practice under Section 21.055(1) as a matter of law.[60] We agree with Lara that this statement is too broad. We look to federal law for guidance in adjudicating retaliation claims under the TCHRA,[61] and federal courts agree that "the act of requesting in good

---

[57] 42 U.S.C. § 12203(a)–(b) (emphases added). The federal statute also contains a subsection (c), which addresses remedies and procedures.

[58] 577 S.W.3d 641, 651 (Tex. App.—Austin 2019) ("Unlike the analogous provision of the ADA, [Section 21.055] includes no mention of the exercise of rights otherwise granted by statute—like the right to request accommodation—as protected activity that might give rise to a retaliation claim.").

[59] *Id.* at 652.

[60] *See id.* at 651 (noting that the Fourth Court of Appeals "has twice held that a request for accommodation is a protected activity under the TCHRA" and stating that the Third Court "disagrees with [its] sister court's interpretation of Section 21.055").

[61] *Alamo Heights*, 544 S.W.3d at 781.

faith a reasonable accommodation is a protected activity under 42 U.S.C. § 12203".[62] Many of these decisions do not address whether an accommodation request would qualify as opposition to an unlawful act under § 12203(a) without subsection (b)'s broader language prohibiting interference with "any right granted or protected by" the ADA. But as TxDOT acknowledges, some federal courts of appeals have expressly recognized (albeit begrudgingly) a consensus among federal authorities that an accommodation request triggers the protections of § 12203(a) in addition to subsection (b).[63] Accordingly, we assume that an accommodation request could, *in some circumstances*, count as opposition to a discriminatory practice.

But our recent precedent is clear that to invoke the protections of Section 21.055, the conduct relied on by the employee "must, at a minimum, alert the employer to the employee's reasonable belief that unlawful discrimination is at issue."[64] As explained below, this standard originates from federal caselaw. We have concluded that it was not met in cases much closer than this one.

---

[62] *Solomon v. Vilsack*, 763 F.3d 1, 15 (D.C. Cir. 2014); *see id.* at 15 n.6 (collecting cases from other circuits).

[63] *See Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898 (8th Cir. 2010). There, the plaintiff alleged that his employer had retaliated against him for requesting a reasonable accommodation for his disability. The court commented:

> One might wonder how the theory behind Kirkeberg's retaliation claim can be squared with the text of the statute. An employee who asserts a right under 42 U.S.C. § 12112(b)(5)(A) to obtain reasonable accommodation for an alleged disability has not "opposed any act or practice made unlawful" by the ADA. Nor has he "testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA." On that basis, it might be thought that Kirkeberg's claim never gets out of the starting gate.

*Id.* at 907. The court went on to hold that it was "bound by [circuit precedent] to conclude that making such a request is protected activity for purposes of 42 U.S.C. § 12203(a)", even though "it is questionable" whether this rule "fits within the literal language of the statute". *Id.* at 908 (quoting *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997)).

[64] *Alamo Heights*, 544 S.W.3d at 786 (citing *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 586 (Tex. 2017)).

The 2018 case *Alamo Heights Independent School District v. Clark* involved claims of sex discrimination in the form of same-sex harassment and retaliation by a middle-school gym teacher who was terminated for poor performance.[65] Plaintiff Clark argued that three internal complaints made prior to her termination were sufficient to invoke Section 21.055.[66] Unlike making an accommodation request, "mak[ing] . . . a charge" and "fil[ing] a complaint" are expressly listed in Section 21.055 as actions protected from retaliation.[67] But we nonetheless held that the specific complaints on which Clark relied were not sufficient to establish the first element of retaliation by prima facie evidence.[68]

Clark's most detailed complaint was a thirteen-page letter to the school principal listing more than four dozen incidents involving two other female coaches. Although "a handful of . . . allegations [in the letter] contain[ed] a sexual component", "an overwhelming number did not."[69] Instead, the majority of the "broad-ranging complaints" outlined in the letter "included mistreatment directed not only toward [Clark] but to all the other coaches, both male and female, as well as parents and students."[70] Furthermore, Clark "never even hinted [in the letter] that she believed she was targeted because of her gender or any other protected trait", instead attributing the harassers' motives to "thinking [that Clark] is a 'snotty' Alamo Heights mom and disliking her

---

[65] *Id.* at 764–769.

[66] *Id.* at 786.

[67] TEX. LAB. CODE § 21.055(2)–(3).

[68] *Alamo Heights*, 544 S.W.3d at 786.

[69] *Id.*

[70] *Id.*

teaching and parenting style".[71] We explained that although "'[m]agic words' are not required to invoke the TCHRA's anti-retaliation protection", "complaining only of 'harassment,' 'hostile environment,' 'discrimination,' or 'bullying' is not enough."[72] The employee must alert the employer to an allegation of discrimination, and no reasonable jury could conclude that Clark's letter alerted the principal to Clark's belief that the conduct she complained about constituted sex-based discrimination.[73]

*Clark* cited *Exxon Mobil Corp. v. Rincones*, which we had decided just a year earlier.[74] In that case, plaintiff Rincones alleged racial-discrimination and retaliation claims against his employer after being fired for failing a drug test. Rincones alleged that he had invoked the protections of Section 21.055 by asking a human-resources representative, "how come Tony Davis [a white employee] was still working and I couldn't"?[75] We cited a Fifth Circuit case, *Brown v. United Parcel Service*, for the rule that "protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue",[76] and we held that "Rincones's statement about Davis [was] not sufficient to have alerted [his employer] to alleged

---

[71] *Id.*

[72] *Id.* at 786–787.

[73] *Id.* at 787.

[74] 520 S.W.3d 572 (Tex. 2017), *cited in Alamo Heights*, 544 S.W.3d at 786 n.122.

[75] *Id.* at 585.

[76] *Id.* at 586 (quoting *Brown v. United Parcel Serv.*, 406 F. App'x 837, 840 (5th Cir. 2010) (per curiam)).

discrimination."[77] *Brown*, in turn, cited other federal court of appeals' decisions for the rule it announced.[78]

Thus, to invoke the antiretaliation protection of Section 21.055, at least one of Lara's accommodation requests must have alerted TxDOT to Lara's belief that disability discrimination was at issue.[79] Lara points to his testimony that he was "constantly calling" his TxDOT superiors, to his timely filed FMLA and sick-leave paperwork, and to his August 18 telephone conversation with Trowbridge and Talafuse about LWOP. But there is no evidence that Lara alerted TxDOT to the possibility of discrimination in any of these communications. Indeed, the only discriminatory conduct by TxDOT that Lara alleges even now is his eventual termination.

Because there is no evidence that Lara opposed any discriminatory practice by TxDOT, Lara cannot make a prima facie case of retaliation under Section 21.055. And without the presumption of retaliation that establishing a prima facie case provides,[80] "there is . . . no evidence of illegal intent" on the part of TxDOT.[81] We affirm the part of the court of appeals' judgment dismissing this claim.

---

[77] *Id.*

[78] *See Brown*, 406 F. App'x at 840 (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348–349 (5th Cir. 2007); *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006); *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003); *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008)).

[79] *Alamo Heights*, 544 S.W.3d at 786.

[80] *See id.* at 782 (explaining that if an "employee can establish a prima facie case of [retaliation], a rebuttable presumption of [retaliation] arises").

[81] *Id.* at 785.

# V

Finally, the court of appeals concluded that Lara had not pleaded a traditional adverse-action claim under Section 21.051 of the TCHRA, even though both parties assumed that he had and had briefed the claim.[82] Under Section 21.051, it is "an unlawful employment practice" for an employer to "discharge[] an individual" because of disability or another characteristic protected by the Act.[83]

"Texas follows a fair-notice standard for pleading", which "measures whether the pleadings have provided the opposing party sufficient information to enable that party to prepare a defense or a response."[84] The "Causes of Action" section of Lara's original petition cites Section 21.051 and alleges that TxDOT's discriminatory acts against Lara include "termination of [his] employment." This allegation must have been sufficient to enable TxDOT to prepare a response because TxDOT expressly challenged the claim in its motion to dismiss. And after the trial court denied TxDOT's entire motion to dismiss, TxDOT challenged the court's dismissal of Lara's Section 21.051 claim in its briefing to the court of appeals. Thus, the court of appeals' conclusion that Lara failed to plead a claim under Section 21.051 is simply wrong. The court should have addressed this claim.

The elements of a Section 21.051 disability-discrimination claim are that (1) the plaintiff has a disability, (2) the plaintiff was qualified for the job, and (3) the plaintiff suffered an adverse

---

[82] 577 S.W.3d 641, 647 n.1 (Tex. App.—Austin 2019).

[83] TEX. LAB. CODE § 21.051(1).

[84] *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224–225 (Tex. 2017) (citing *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000); *Kopplow Dev., Inc. v. City of San Antonio*, 399 S.W.3d 532, 536 (Tex. 2013); *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982)).

employment decision because of his disability.[85] TxDOT does not challenge Lara's disability in this appeal, and we have already held in our analysis of Lara's failure-to-accommodate claim that the evidence is sufficient to raise a fact issue that at the time of Lara's termination, he had requested just five more weeks of leave and thus remained a qualified individual. Lara's ability to proceed on his Section 21.051 claim therefore turns on causation. But because the parties' briefing has not focused on this claim, we remand the case to the court of appeals to adjudicate in the first instance TxDOT's appeal of the trial court's denial of its motion to dismiss Lara's Section 21.051 claim.

*    *    *    *    *

We agree with the court of appeals that Lara has raised a genuine issue of material fact with respect to his failure-to-accommodate claim under TCHRA Section 21.128 and affirm its judgment with respect to that claim. We also agree with the court of appeals that Lara cannot make a prima facie case of retaliation under Section 21.055 and affirm its judgment dismissing that claim with prejudice. Finally, we conclude that Lara's pleadings gave fair notice of a claim for discrimination under Section 21.051 and that the court of appeals should have addressed TxDOT's challenge to the trial court's failure to dismiss that claim. We remand this case to the court of appeals for adjudication of TxDOT's challenge to Lara's Section 21.051 claim in the first instance.

Nathan L. Hecht
Chief Justice

**OPINION DELIVERED:** June 25, 2021

---

[85] *Green v. Dallas Cnty. Schs.*, 537 S.W.3d 501, 503 (Tex. 2017) (per curiam).

25