File Name: 07a0709n.06

Filed: October 3, 2007

NOT RECOMMENDED FOR FULL-TEXT  PUBLICATION

No.  06-4628

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

THOMAS LEEDS,

    Plaintiff-Appellant,

v.

JOHN E. POTTER, POSTMASTER GENERAL,

    Defendant-Appellee.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

_____ /

BEFORE:    CLAY and GIBBONS, Circuit Judges; HOOD, Chief District Judge.[*]

    **CLAY, Circuit Judge.**  Plaintiff Thomas Leeds, an employee of the United States Postal

Service, appeals the district court's grant of summary judgment in favor of Defendant John Potter,

Postmaster General, dismissing Plaintiff's age, race and disability discrimination claims. For the

reasons set forth below, this Court **AFFIRMS** the district court's grant of summary judgment.

**BACKGROUND**

_____

    [*]The Honorable Joseph M. Hood, Chief United States District Judge for the Eastern District
of Kentucky, sitting by designation.

Plaintiff, a white male, began working with the United States Postal Service ("USPS") in 1974 as a part-time flexible letter carrier. In 1983 he suffered a back injury while on the job, which subsequently resulted in back surgery. When Plaintiff returned to work after his surgery, he was placed in a "limited duty" position in the Rewrap Section since he was no longer able to function as a mail carrier. These positions are reserved to accommodate employees injured while on the job and to allow them to perform restricted functions to aid in their recovery. Specifically, Plaintiff's job offer for the Rewrap Section position stated:

> This restricted duty position is tailored to meet your personal physical limitation. This job does not qualify as a position which requires assignment to a competitive seniority bidding. All positions requiring assignment by seniority contain duties within different job descriptions which are contrary and contro-convalescent to your physical condition. Therefore, although you have and gain in seniority, you cannot bid on other assignments unless your physical condition improves to permit your reassignment.

(J.A. at 157.) Sometime later Plaintiff requested and was granted a transfer to the non-restricted position of forklift operator.

At some point in 2002,[1] Plaintiff was injured and as a result unable to work until August 19, 2002. When he returned to work, Plaintiff submitted a doctor's letter to his supervisors stating that he would "be able to return to work . . . without restriction." (J.A. at 120.) This letter was then placed in his personnel file. On September 28, 2002, Plaintiff was involved in an accident with the forklift he was operating. Upon observing the accident, an African-American employee, Obie North,

---

[1]The record is unclear as to when the injury occurred. However, Plaintiff's doctor's visit for the injury occurred on July 31, 2002.

complained to supervisor Kay Johnson that Plaintiff would not be disciplined because of his race.[2]

Johnson told North to get back to work and be quiet. When Plaintiff complained to his supervisor, Emory Ogletree, about his co-worker's comments, Ogletree promised to take care of the situation and told Plaintiff that it was not necessary to initiate an Equal Employment Opportunity ("EEO") claim. Within two weeks of the accident, supervisor Johnson directed North to apologize to Plaintiff and indicated that no further action would be taken against North.

As a result of the accident, Plaintiff's forklift license was suspended pursuant to standard USPS procedure. The suspension lasted for some period between thirty and ninety days.[3] Due to the suspension, Plaintiff could not work as a forklift operator. On September 30, Rachel McGrady, a temporary supervisor who was assigned to oversee Plaintiff that day, sent Plaintiff to work on the sack sorter machine. Plaintiff agreed to do the work but later told Manager of Distribution Operations Hugh Martin that the job was "kicking [his] ass." (J.A. at 105.) He told supervisor Ron Parsel the same thing. They both told Plaintiff he should "hang in there" and "be careful." (J.A. at 105.)

On his fourth day on the sack sorter machine, Plaintiff left early because of back pain. He returned to work on October 7, 2002 and was assigned to sort loose mail. Later that day, Plaintiff complained of back pain so severe that a co-worker drove him to an urgent care medical facility. He

---

[2]North stated, "Did you see that? I want to see that white motherfucker lose his job like I did." (J.A. at 99.) North's forklift license had been suspended for six months for his involvement in an accident.

[3]The exact term of suspension is in dispute. Plaintiff claims it was ninety days. Emory Ogletree, Plaintiff's direct supervisor claims the suspension lasted between thirty and forty-five days.

was diagnosed with a strain, and returned to work to finish his shift. The following day Plaintiff was not scheduled to work and saw a doctor. By October 11, 2002, Plaintiff was under several medical restrictions and did not return to work until December 16, 2002, at which time he returned only to submit further documentation that he could not continue to work.

On January 17, 2003, Plaintiff filed a claim with the EEO officer for age, disability and race discrimination. The claim was dismissed as untimely. Plaintiff brought suit in district court, asserting claims of disability discrimination pursuant to the Rehabilitation Act, 29 U.S.C. § 701, *et seq.,* age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.,* and race discrimination pursuant to Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Plaintiff claimed that the USPS failed to accommodate his disability by removing him from his forklift operator position and reassigning him to sack sorting, a job that requires continuous bending, pushing and lifting. Plaintiff also claimed that the USPS discriminated based on race and age by treating younger African-American employees better than older white employees. Defendant moved for summary judgment, and the district court granted summary judgment on all claims. Plaintiff appeals the district court's grant of summary judgment for Defendant on the grounds that the district court erred in declining to equitably toll Plaintiff's race discrimination claims and in holding that Plaintiff did not make a prima facie showing of disability discrimination. For the reasons that follow, we **AFFIRM** the district court's judgment on both issues.

**DISCUSSION**

## A.    Standard of Review

This Court reviews a district court's grant of summary judgment *de novo. Blackmore v. Kalamazoo County*, 390 F.3d 890, 894-95 (6th Cir. 2004). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. While all inferences must be drawn in favor of the nonmoving party, this Court is under no obligation to imagine favorable facts where the nonmoving party has alleged none. "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## B.    Analysis

### 1.    Racial Discrimination Claim

Regulations for federal employees require that if a party claiming discrimination does not file a complaint with an EEO counselor within forty-five days of the offense, the complaint must be dismissed by the agency as well as the district court unless estoppel or equitable tolling applies. 29

C.F.R. § 1614.105(a)(1); *Brown v. General Serv. Admin.*, 425 U.S. 820, 835 (1976). It is uncontested that Plaintiff filed his complaint well after the forty-five-day period, but he contends that Ogletree's assurances that North would be disciplined by the USPS discouraged him from timely filing, and that as a result, the equities weigh in his favor.

We have held that "[t]he forty-five day filing period is not a jurisdictional prerequisite, and can be tolled where principles of equity demand it." *Steiner v. Henderson*, 354 F.3d 432, 435 (6th Cir. 2003). However, tolling should be "available only in compelling circumstances." *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1488 (6th Cir. 1989). This Court looks to five factors to determine whether equitable tolling is available: "1) whether the plaintiff had actual notice of the time restraint; (2) whether she had constructive notice of the time restraint; (3) the degree of diligence exerted in pursuing her rights; (4) the degree of prejudice to the defendant; and (5) the reasonableness of plaintiff's ignorance of the time constraint." *Steiner*, 354 F.3d at 435. Importantly, "[t]hese factors are not exclusive bases for equitable tolling . . . and the decision to allow equitable tolling is made on a case-by-case basis." *Id.*

In the instant case, it is undisputed that Plaintiff had no actual or constructive notice of the time restraint and such ignorance was certainly reasonable. Ogletree, Plaintiff's direct supervisor, testified that even he was unaware of the requirements to file an EEO complaint. Defendant focuses his argument on the fact that Plaintiff was not diligent in pursuing his rights against Defendant. Equitable tolling would be proper if Plaintiff's failure to file within the appropriate deadline "unavoidably arose from circumstances beyond [Plaintiff's] control." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000).

The undisputed facts of the instant case indicate that Plaintiff did not exercise due diligence. As stated in the district court opinion, Plaintiff's argument that Ogletree's promise to take action justified Plaintiff's delay in filing an EEO claim is not persuasive. *Leeds v. Potter*, No. 1:04-CV-429, 2006 WL 2860980, at *7 (S.D. Ohio Oct. 4, 2006). Two weeks after the incident, Plaintiff knew that his supervisors had not disposed of the matter to his satisfaction. At that point, Plaintiff was on notice as to how the USPS was handling the situation, and if he found it unsatisfactory, he should have initiated the grievance process with the EEO counselor. Instead, Plaintiff waited an additional four months before filing a complaint. As the district court noted, Plaintiff stated that he filed a grievance with his union regarding his discrimination claims and that he decided to file an EEO claim when he discovered that his grievance had not been acted upon. *Leeds*, 2006 WL 2860980, at *6. Thus, the four-month delay in filing an EEO claim was not attributable to Ogletree's assurances but to the union's failure to act upon Plaintiff's grievance. Further, a review of the complaint that was ultimately filed reveals that while Plaintiff did mark the appropriate box alleging racial discrimination along with his other claims, his brief narrative of the discriminatory event makes no mention of North's comments. By filing a complaint with the EEO counselor four months late and failing to include any mention of his racial discrimination claim in this complaint, Plaintiff failed to diligently pursue his racial discrimination claim. Equitable tolling should be invoked only in rare cases where the facts illustrate that the plaintiff's case is compelling; this is not the case in Plaintiff's situation. *See Puckett*, 889 F.2d at 1488. Thus, the district court properly refused to invoke the doctrine of equitable tolling to save Plaintiff's claim from being time-barred.

## 2.      Disability Discrimination Claim

Plaintiff also argues that the district court erred in granting Defendant summary judgment on the merits of Plaintiff's disability discrimination claim brought under the Rehabilitation Act. Plaintiff claims that Defendant refused to provide reasonable accommodation of his disability. However, Plaintiff failed to give Defendant notice of his need for accommodation. This court agrees with the district court's determination that Defendant's general statement regarding the difficulty of his new work assignment was not enough to constitute a request for accommodation.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court created a framework for analyzing Title VII claims that was later clarified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). There are three steps involved in this inquiry. First, Plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802. Next, the burden switches to Defendant to proffer legitimate, nondiscriminatory business justifications for the adverse action. *Id.* at 802-03. Finally, the burden switches back to Plaintiff to show that these reasons are pretexts for discrimination. *Id.* at 804. In the instant case, Plaintiff essentially argues that by suspending his license and "traveling" him to positions involving general mail handling, Defendant failed to accommodate his disability, and as a result he suffered discrimination. Plaintiff must first make a prima facie case of such discrimination.

Plaintiff brings his disability discrimination claim under the Rehabilitation Act. "The Rehabilitation Act prohibits the United States Postal Service from discriminating against their employees on the basis of a disability." *DiCarlo v. Potter*, 358 F.3d 408, 418 (6th Cir. 2004) (citing

29 U.S.C. § 794(a)). "If the plaintiff seeks to establish his or her case indirectly, without direct proof of discrimination, the plaintiff may establish a prima facie case of discrimination by showing that: 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996); *see also Gaines v. Runyon*, 107 F.3d 1171, 1175-76 (6th Cir. 1997).

A disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). Notably, proof of an actual disability is a threshold requirement but one that Defendant concedes in the instant case. To the extent Defendant argues that Plaintiff was not disabled, he does so as an element of arguing that Plaintiff's supervisors did not have knowledge of the disability. Thus, in the present case, the two factors the parties contest are the second and fourth prongs of the test.

As this Court has held, "the 'otherwise qualified' inquiry requires a consideration not only of the [disabled] applicant's ability to perform the job's essential function, but also whether a reasonable accommodation by the employer would enable the handicapped person to perform those functions." *Hall v. United States Postal Service*, 857 F.2d 1073, 1078 (6th Cir. 1988). Thus, a disabled employee will still be considered otherwise qualified if a reasonable accommodation by the employer would render the employee capable of performing the "essential functions" of the job. *Id.* "Although a 'reasonable accommodation' may include reassignment to a vacant position, 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii), an employer need not reassign a disabled employee to

a position for which he is not qualified, nor is the employer required to waive legitimate, non-discriminatory employment policies or displace other employees' rights in order to accommodate a disabled employee." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004) (citing *Burns v. Coca-Cola Enter., Inc.*, 222 F.3d 247, 257 (6th Cir.2000)). Thus, if Plaintiff lost his job because he was legitimately unqualified for it, Defendant had no obligation to keep him in the position as an accommodation for a disability.

In the instant case, Plaintiff contends that the decision to place him in positions that were too physically taxing for him to perform constituted discrimination whereas his position as a forklift operator accommodated his disability. However, importantly, Plaintiff was unqualified for the position of forklift operator following his accident because it is the policy of the USPS to suspend the forklift license of any individual involved in an accident pending investigation. Thus, Plaintiff does not attempt to allege that the decision to remove him from his forklift position was itself an aspect of the alleged discrimination. Because the event disqualifying him from the position he sought was not motivated by the discrimination he alleges, Plaintiff cannot contend that he was otherwise qualified to hold the position with a reasonable accommodation for his disability; Plaintiff was unqualified for the position of forklift operator because of a validly suspended license and not because of his disability. Thus, Plaintiff cannot succeed on this prong.

Plaintiff also cannot show that his supervisors had knowledge of his disability as is required to establish a prima facie case. As this Court has explicitly held, "an employer cannot be said to know or have reason to know of an employee's disability where that employee returns to work without restriction or request for accommodation. The natural assumption in such a case is that the

10

employee is fully fit for work." *Hubbs v. Textron, Inc.*, 2000 U.S. App. LEXIS 30465, at *7 (6th Cir. 2000). A plaintiff must show that an "accommodation was needed, in that a causal relationship existed between the disability and the request for accommodation." *Gerton v. Verizon S. Inc.*, 145 F. App'x. 159, 164 (6th Cir. 2005). Thus, not only does a plaintiff have to show that supervisors actually knew of the disability, but he or she must show that an accommodation was requested and the employer failed to provide a reasonable accommodation. *Gaines*, 107 F.3d at 1175.

In the instant case, Plaintiff admits that the supervisor directly responsible for reassigning him after his license was suspended was unaware that Plaintiff ever had a medical problem. Plaintiff also does not contest that the most recent letter from a doctor in his personnel file specified that he was not on any work restrictions. Finally, he does not dispute the fact that according to the job description for his Rewrap Section position, the one restricted work position Plaintiff did hold following his surgery, he could only be reassigned to a position based on seniority (like the forklift operator position) if his physical condition improved such that he was no longer restricted. As the district court noted, these facts all indicate that Plaintiff's supervisors had no way of knowing that Plaintiff still suffered from a disability that required an accommodation. *Leeds*, 2006 WL 2860980, at *10.

Naturally, if Plaintiff had requested a reasonable accommodation, his supervisors would have been put on notice of his disability. Plaintiff alleges that his comments to supervisors Martin and Parsel that the position he held after his license was pulled was "kicking [his] ass" constituted requests for accommodations. (J.A. at 105.) However, these statements are not nearly specific enough to be considered requests for accommodations. While this Court has held that an employee

11

need not use the magic words "accommodation" or even "disability," the request does need to make it clear from the context that it is being made in order to conform with existing medical restrictions. *Smith v. Henderson*, 376 F.3d 529, 535 (6th Cir. 2004). Plaintiff failed to do this with his statement. There is nothing that would have indicated to Plaintiff's supervisors that Plaintiff's statements meant anything more serious than that the work was hard. The district court properly found that these statements cannot be considered requests for a reasonable accommodation. *Leeds*, 2006 WL 2860980, at \*11. Plaintiff is able to point only to the fact that Ogletree admitted that he had seen a handicap placard in Plaintiff's car, which indicates that he knew that Plaintiff had an impairment of some kind. However, proof of Ogletree's limited knowledge is not enough to establish Plaintiff's prima facie case. Plaintiff must show that a supervisor knew that he had an "impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2). Without more, the mere allegation that Ogletree had knowledge of Plaintiff's handicap placard cannot meet this burden. Thus, the district court properly held that Plaintiff did not establish a prima facie case of disability discrimination.

## CONCLUSION

Because the district court properly concluded that equitable tolling was not available for Plaintiff's racial discrimination claim and that Plaintiff did not establish a prima facie case of disability discrimination, this Court **AFFIRMS** the district court's grant of summary judgment to Defendant.