NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0188n.06

Case No. 23-1439

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Apr 29, 2024

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| MARY ELLEN YANICK, | ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| THE KROGER COMPANY OF MICHIGAN, | ) ) | |
| Defendant-Appellee. | ) ) ) | OPINION |

Before: BOGGS, McKEAGUE, and LARSEN, Circuit Judges.

**McKEAGUE, Circuit Judge.** Mary Ellen Yanick managed a Michigan Kroger's bakery department for over fifteen years. In 2018, she was diagnosed with breast cancer. After she told one of her supervisors, Yanick claims that she faced incessant criticism and harassment. Six months later, she stepped down. Yanick sued Kroger for disability discrimination, failure to accommodate, and retaliation. The district court held that none of Yanick's claims survive summary judgment. As to her disability discrimination and retaliation claims, we affirm. But we reverse on her claim for failure to accommodate.

## I. BACKGROUND

### A.

Yanick joined Kroger's Pinckney, Michigan, store in the early 2000s. She worked as its bakery manager. As head of the bakery department, Yanick had to supervise its day-to-day

functions, including, for example, preparing bakery items. She also needed to train and develop the department's associates.

For roughly fifteen years, Yanick generally met expectations. In 2009, her overall performance was rated "Satisfactory." 2009 Performance Review, R.19-2 at PageID 412. And per her 2016 performance review, Yanick was a "good, consistent performer." 2016 Performance Review, R.19-1 at PageID 404. Even so, she had room to improve. Yanick and her supervisor agreed that she could refine her coaching and teamwork skills.

**B.**

Fast forward to 2018. Yanick was still the Pinckney store's bakery manager, but two major changes were coming. First, on January 23, Yanick was diagnosed with breast cancer. Second, that same week, Marli Schnepp took over as the Pinckney store's manager. Schnepp would oversee the entire store, including the bakery department.

Word quickly spread to Schnepp about Yanick's diagnosis. On January 24, Yanick told one of the store's assistant managers. That manager relayed the message to Schnepp, stating, "Mary Ellen just told me she had cancer." Schnepp Dep., R.18-4 at PageID 292. Schnepp says that, at the time, she did not know who "Mary Ellen" was and did not figure out that it was Yanick until she read Yanick's deposition much later.

As Schnepp learned about the store, she thought that the bakery department did not meet Kroger's standards. Among other things, Schnepp believed there were never enough products on display and that Yanick baked the wrong products. Yanick denies that her department had daily problems.

2

Schnepp and Yanick recount what followed differently. Schnepp says she and Yanick had "one-on-one coaching on the sales floor." *Id.* at 295. Schnepp viewed formal discipline as a last resort. So she first tried to informally discuss the department's shortcomings with Yanick. Schnepp says she had similar conversations with other department heads. Schnepp or an assistant manager would also help the bakery department bake products when it fell behind. Yanick says that Schnepp badgered, criticized, and harassed her. Schnepp would appear in the bakery department and "[c]onstantly" ask Yanick questions. Yanick Dep., R.18-2 at PageID 268. Schnepp's attitude, according to Yanick, was "usually . . . unfriendly [and] critical." Yanick Decl., R.19-3 at PageID 415. Schnepp did not seek to "actually help [Yanick] improve on alleged performance deficiencies." *Id.*

Schnepp's next step is undisputed. When issues in the bakery department persisted, she called Yanick into her office. Over nine days, the two had three meetings.

The first occurred on February 7, 2018. Schnepp, an assistant manager, a union representative (though not the one Yanick requested), and Yanick gathered in Schnepp's office. Schnepp told Yanick that she wasn't doing her job. As before, Schnepp discussed the department's lackluster inventory levels. Yanick explained that she had a lot going on. She had a doctor's appointment the day before, so she could not stay late and fill the bakery shelves. She also had an upcoming biopsy.

Schnepp and Yanick met again a few days later. The meeting's exact details are unclear, but they may have discussed staffing and baking duties for Valentine's Day.

The third meeting came on February 15. Schnepp provided Yanick with a written list of the daily duties expected of a Kroger bakery manager. Schnepp explained that if Yanick continued

3

as bakery manager, Kroger expected her to carry out those duties.  Otherwise, Yanick would face discipline "up to and including termination."  Email of Expectations, R.18-7 at PageID 314; *see* Yanick Dep., R.18-2 at PageID 265.  But there was another option.  Rather than continue as bakery manager, Schnepp said Yanick could step down.  Yanick thought this meant Schnepp believed that she *should* step down.

## C.

Shortly after the third meeting, Yanick clocked out and began medical leave.  On Yanick's medical forms, her doctor specified that she needed leave to avoid "undue mental distress" and undergo surgery.  Leave Certification, R.18-9 at PageID 319.

Within a week of starting leave, Yanick complained about her experiences with Schnepp using Kroger's hotline.  Yanick alleged that Schnepp knew she had breast cancer but "harassed" her anyway.  Hotline Report, R.18-6 at PageID 312.  She emphasized that Schnepp threatened discipline and, after being informed that Yanick was going on medical leave, told Yanick that "it might be a good time for [her] to think about stepping down."  *Id.*

Yanick's doctor initially estimated that Yanick would return to work on March 28, 2018.  But by March, Yanick still had a ten-pound lifting restriction in place.  Rather than have Yanick come back then, Kroger extended her leave a few more months.

## D.

Yanick returned to work on June 11, 2018, without restrictions.  Despite four months having passed, things between her and Schnepp picked up where they left off.

One week after Yanick's return, Schnepp called Yanick into her office.  Representatives from the union and HR also attended the meeting.  Schnepp asked Yanick how things were going

now that she had been back for a week; in Schnepp's view, Yanick still wasn't meeting expectations. Yanick said she "was struggling and needed some time to get back to normal." Yanick Dep., R.18-2 at PageID 278. She told Schnepp she had worked 53 hours her first week back, which was "hard for [her] physically." *Id.* at 273. She was also trying to get the hang of Kroger's new programs. In response, Schnepp questioned, "Who approved your overtime?" *Id.* Though Schnepp was sympathetic to Yanick's situation, Schnepp noted that "business is business." *Id.* at 272. So, Schnepp reminded Yanick that, if things continued, Yanick could be disciplined or fired. Or, Schnepp reiterated, Yanick could step down. Yanick at first agreed to step down but then changed her mind and left the meeting.

Over the next week, other Kroger employees got involved. One of Yanick's supervisors advised her that Schnepp couldn't force her to step down. That supervisor and a coordinator from HR also agreed to give Yanick more training. Later, the HR coordinator talked with Yanick and Schnepp. Finally, Yanick heard from a few bakery department employees, who said that the department needed more help and to be more organized.

On June 26, 2018, Yanick stepped down. She first transferred to a different department. But ultimately, she ended up working as a bakery clerk at a different Kroger with a lower salary and less authority.

## E.

Yanick felt like Schnepp "wore [her] down" and harassed her out of her position. Yanick's Notes, R.18-5 at PageID 309. She pursued legal action.

Yanick turned first to the Equal Employment Opportunity Commission. She filed an inquiry and then a charge of discrimination. In her charge, Yanick alleged that she was

"discriminated against and demoted because of [her] disability." EEOC Charge, R.18-14 at PageID 358.

After receiving a right-to-sue letter, Yanick turned to the courts for relief. She raised three claims, all under the Americans with Disabilities Act: (1) disability discrimination, (2) failure to accommodate, and (3) retaliation. 42 U.S.C. § 12112. The district court granted Kroger summary judgment. Yanick's first and third claims failed because, the court reasoned, she could not demonstrate an adverse employment action. As for Yanick's failure-to-accommodate claim, the court held that she did not request a reasonable accommodation. Yanick appeals.

## II. STANDARD OF REVIEW

We review the district court's decision granting summary judgment de novo. *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023). Accordingly, the relevant questions are: Has Kroger shown that there are no genuine disputes of material fact? And is it entitled to judgment as a matter of law? *See* Fed R. Civ. P. 56(a). If so, then summary judgment is appropriate. *Id.* But if the evidence is not so one-sided and a reasonable jury could rule for Yanick, then summary judgment is inappropriate. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003); *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 375 (6th Cir. 2002). In answering these questions, we draw all inferences in Yanick's favor. *Hrdlicka*, 63 F.4th at 566.

## III. ANALYSIS

Yanick argues that her claims should have survived summary judgment. We consider each—starting with her claim for failure to accommodate—in turn.

## A.  Failure to Accommodate

Employers like Kroger must reasonably accommodate disabled employees.  *See* 42 U.S.C. § 12112(b)(5)(A); *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 757, 761 (6th Cir. 2015) (en banc). After all, the ADA prohibits discriminating against a qualified individual because of their disability.  42 U.S.C. § 12112(a); *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008).  Discrimination includes failing to provide reasonable accommodations for an otherwise qualified individual's known disability.  42 U.S.C. § 12112(b)(5)(A).  That is, unless the employer can show that the requested accommodation would cause it undue hardship.  *Id.*

### 1.

Yanick contends that Kroger failed to accommodate her disability.  For her claim to succeed, she has to provide direct evidence of discrimination.  *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868–69 (6th Cir. 2007); *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 417 (6th Cir. 2020).  That means Yanick must show, among other things, that (1) she requested an accommodation and (2) her request was objectively reasonable.  *Kleiber*, 485 F.3d at 870; *Talley*, 542 F.3d at 1108.  Yanick thought she carried her burden.

The district court disagreed.  It held that Yanick failed to request a reasonable accommodation for two reasons.  For one, she did not tie her request to a medical restriction.  For two, she did not explain how her request was necessary to remedy a key obstacle.

The district court erred.  Yanick raised a triable issue on whether she requested a reasonable accommodation.

7

*Did Yanick make a request?*

There is no bright-line rule for determining whether an employee requested an accommodation. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 307 (6th Cir. 2016). Indeed, employees need not use words like "accommodation" or "disability." *Fisher*, 951 F.3d at 419; *see also Tennial*, 840 F.3d at 307 (fleeting reference to "ADA deal" insufficient). Instead, this Court more generally assesses whether the employee communicated a need for an adjustment at work because of a disability. *Smith v. Henderson*, 376 F.3d 529, 535–36 (6th Cir. 2004); *see Leeds v. Potter*, 249 F. App'x 442, 449 (6th Cir. 2007). In performing that assessment, context matters. *Smith*, 376 F.3d at 535–36. Employers must draw reasonable inferences from what an employee says, bearing in mind the statements' context. *Id.*

A reasonable jury could conclude that Yanick made a request. During the June 18 meeting with Schnepp, Yanick told her she "needed some time to get back to normal." Yanick Dep., R.18-2 at PageID 278. Yanick said she "was struggling," *id.*, and added that she had worked 53 hours the week before and wanted the chance "to get used to all the work again," *id.* at 273. One could reasonably understand these comments as a request for a reduced work schedule.[1] In fact, the district court concluded as much. It said Yanick's comments "were specific enough." Order Granting Summ. J., R.22 at PageID 477–78. Yanick also tied her request to her disability. *See*

---

[1] During oral argument, counsel for Yanick added that Yanick wanted to be "criticized less by Schnepp, who badgered her constantly." Oral Argument, 07:49–08:17. If that were Yanick's only request, her claim would fail. The ADA doesn't impose a general duty on employers to be nice. Instead, employers need only provide accommodations addressing "a key obstacle" presented by an employee's disability. *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 812 (6th Cir. 2020) (citation omitted). As explained below, one of Yanick's other requests—a modified work schedule—satisfies that standard.

*Leeds*, 249 F. App'x at 449. She told Schnepp that the job "was hard for [her] physically." Yanick Dep., R.18-2 at PageID 273. And one could reasonably infer from context that Yanick's physical struggles stemmed from her disability. *See Smith*, 376 F.3d at 535–36. Yanick had recently undergone breast-cancer surgery and was on medical leave for four months—information Schnepp knew. Further, the June 18 meeting with Schnepp occurred within one week of Yanick returning. Given this context, Yanick didn't have to say she was tired because of her recent surgery; Kroger should have made that reasonable inference. *Id.*

To be sure, Yanick's comments are no model for how to make an accommodation request. In other cases, statements like hers might not be enough to avoid summary judgment. *Cf. Leeds*, 249 F. App'x at 449. But Yanick's comments here provide just enough information, given their context, to raise a triable issue. As a result, Kroger hasn't shown that the evidence is so one-sided that a jury could only rule in its favor on this point.

Kroger sees things differently. It contends that Yanick did not connect her request to medical restrictions. But none of its arguments supporting that proposition is persuasive.

Kroger first argues that it could not have known that Yanick's request was tied to a medical restriction because Yanick returned to work *without restrictions*. As a result, Kroger assumed that Yanick was fully fit for work. While that assumption was appropriate initially, *see Hubbs v. Textron, Inc.*, 225 F.3d 659 (6th Cir. 2000) (unpublished table decision), that was no longer the case once Yanick explained that she was still struggling physically. Yanick's comments during the June 18 meeting informed Kroger of lingering issues from her disability. *See* Yanick Dep., R.18-2 at PageID 273, 278. If Kroger didn't think those issues were genuine, it could have asked Yanick to provide more medical documentation. *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d

805, 812 (6th Cir. 2020). It didn't. An earlier note stating that Yanick lacked restrictions does not trump her later indications that she was experiencing difficulties. Ruling otherwise would absolve an employer from providing accommodations whenever an employee returns without restrictions—even if restrictions later prove necessary.

Kroger next argues that Yanick's case is a lot like *Leeds v. Potter*. There, we held that an employee who told his supervisor that his job was "kicking [his] ass" did not request an accommodation. *Leeds*, 249 F. App'x at 449–50 (alteration in original). In that case, we held that the statement did not show that Leeds made his request to "conform with existing medical restrictions." *Id.*

But Kroger overlooks a few key distinctions between *Leeds* and this case. For starters, Yanick's comments were more specific (though not much) than those in *Leeds*. Not only did she state that she was struggling physically, but Yanick also explained that she had worked 53 hours the week before. Yanick Dep., R.18-2 at PageID 273. Additionally, Yanick noted she "needed some time to get back to normal" and "get used to all the work again." *Id.* at 273, 278. The context of Leeds's statement was also very different. Leeds made his statement roughly *six* weeks after returning from leave. *Leeds*, 249 F. App'x at 445. By then, his medical problem was much more remote than Yanick's. Leeds had also recently been reassigned to a different position. *Id.* Accordingly, one could reasonably interpret his comments—unlike Yanick's—to generally discuss the difficulty of his new job. Further, whether he made his statement to anyone who knew about his prior medical problems is unclear. But Schnepp had such information. Considering these differences, *Leeds* isn't persuasive here.

10

During oral argument, Kroger also recast the context of the June 18 meeting. Starting in February, Kroger noted, Schnepp had counseled Yanick on meeting expectations. And the June 18 meeting was a continuation of that performance discussion. So, Kroger's argument goes, Schnepp would have suspected that Yanick's discussion of her struggles related to her work performance—not her disability. That's one way to interpret the record. But adopting that interpretation overlooks Yanick's four months of leave in the interim and impermissibly frames the record in the light most favorable to Kroger.

*Was Yanick's accommodation request reasonable?*

That leaves whether Yanick made a *reasonable* accommodation request. *Keith v. County of Oakland*, 703 F.3d 918, 927 (6th Cir. 2013). That question is one of fact. *Id.* It requires an employee to show that the proposed accommodation "seems reasonable on its face." *Fisher*, 951 F.3d at 419 (quoting *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002)). We therefore ask, is Yanick's accommodation request reasonable in the general run of cases? *See id.*

It is. Modified work schedules are a classic example of a reasonable accommodation. The ADA explicitly instructs that "reasonable accommodation" may include "part-time or modified work schedules." 42 U.S.C. § 12111(9)(B). Our case law confirms that principle. *See Hostettler v. Coll. of Wooster*, 895 F.3d 844, 856–57 (6th Cir. 2018).

Granted, a modified work schedule is not *always* reasonable. Maybe the schedule imposes an undue hardship on the employer. Or perhaps it eliminates an essential part of the employee's job. After all, some positions demand or require an employee to work full-time. *See id.* at 857. In either case, the request would be unreasonable. *See* 42 U.S.C. § 12112(b)(5)(A); *Wyatt v. Nissan*

*N. Am., Inc.*, 999 F.3d 400, 418–19 (6th Cir. 2021); *Ford Motor Co.*, 782 F.3d at 763. But Kroger didn't press either of those arguments below. Nor does it now.

Kroger instead argues that Yanick's request was unreasonable because it did not address a key obstacle preventing Yanick from performing one of her job's necessary functions. The district court found that argument persuasive. We disagree.

This Court succinctly laid out the "key obstacle" standard in *Jakubowski v. Christ Hospital, Inc.*, 627 F.3d 195, 202 (6th Cir. 2010). There, we held that an accommodation is reasonable only if it addresses "a key obstacle preventing [the employee] from performing a necessary function" of the job. *Tchankpa*, 951 F.3d at 812 (alteration in original) (quoting *Jakubowski*, 627 F.3d at 202). Jakubowski's proposed accommodation did not meet that standard. *Jakubowski*, 627 F.3d at 202. The employee in that case, a medical resident, had suggested informing hospital physicians and staff of his condition, its symptoms, and its triggers. *Id.* But his communication with staff wasn't the issue; his disability impeded his ability to communicate with patients. *See id.* Because his proposed accommodation did not address that problem, we concluded that his failure-to-accommodate claim failed. *Id.*

Two other cases from this Circuit—one of which Kroger heavily relies on—further demonstrate when a proposed accommodation fails to address a "key obstacle." The first is *Stallings v. Detroit Public Schools*. The employee there—a teacher—proposed teaching prekindergarten classes instead of fifth grade. *Stallings*, 658 F. App'x 221, 227 (6th Cir. 2016). That accommodation would not, however, mitigate the impact on her arthritic knee. *Id.* Indeed, Stalling's doctor had recommended "no classroom" work at all. *Id.* The other case is *Tchankpa*. Tchankpa requested working from home three days a week. *Tchankpa*, 951 F.3d at 813. We found

that request unreasonable because he did not explain how doing so would alleviate his shoulder pain. *Id.* Further, Tchankpa's doctor confirmed that he didn't need to work from home. *Id.* Accordingly, in both *Stallings* and *Tchankpa*, the proposed accommodations did not help the disabled employees effectively perform their jobs. *See Ford Motor Co.*, 782 F.3d at 763.

Yanick's proposed accommodation, however, would help her effectively perform her job. Her key obstacle, as she framed it, was fatigue. Yanick was "tired" and "exhausted." Yanick Dep., R.18-2 at PageID 273, 278. After working a 53-hour week, she told Schnepp the job was "hard for [her] physically." *Id.* at 273. Understandably so. As bakery manager, she had to lift items weighing more than ten pounds. Schnepp Dep., R.18-4 at PageID 302–03; *see also* Yanick Dep., R.18-2 at PageID 273 ("[I]t is a physical job."). One way to combat fatigue? Less work. A reduced work schedule would provide Yanick more time to recuperate and get reacclimated to her job's physical demands. *Cf.* Resp. to Def.'s Mot. for Summ. J., R.19 at PageID 393. Yanick's proposed accommodation, therefore, addressed her key obstacle.

\* \* \*

Yanick raises a triable issue as to whether she made an accommodation request. Assuming she did, that request addressed a key obstacle preventing her from performing one of her job's necessary functions. The district court erred in holding otherwise, so we reverse.

**2.**

Despite the analysis above, Kroger still thinks we should affirm. In its view, Yanick's claim fails because she resigned before engaging in an interactive process to discuss potential accommodations. This argument, however, was not addressed by the district court. And we think resolution of this fact-intensive issue—in the first instance—is best left to that court, which is

"most familiar with the factual and procedural background of this action." *Freed v. Thomas*, 976 F.3d 729, 741 (6th Cir. 2020). We thus decline to address it here.

**B.      Disability Discrimination and Retaliation**

We consider Yanick's remaining two claims—for disability discrimination and retaliation—first in tandem and then her retaliation claim separately.

**1.**

Both claims require Yanick to demonstrate that she suffered an adverse employment action. *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 395, 396 (6th Cir. 2017). Yanick tried to do so by arguing that she was constructively demoted. Constructive demotions can constitute an adverse employment action. *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 919 (6th Cir. 2014). That said, the employee must have faced working conditions "objectively intolerable to a reasonable person."[2] *Id.* (quoting *Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002)).

---

[2] In articulating the standard for constructive demotion, we have also required employees to show that their employer deliberately created the intolerable conditions to force them to quit. *See, e.g.*, *Tchankpa*, 951 F.3d at 814; *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 303 (6th Cir. 2019). Indeed, one of our recently published opinions, *Cooper v. Dolgencorp, LLC*, applied this requirement while affirming the district court's decision granting an employer summary judgment. 93 F.4th 360, 373–74 (6th Cir. 2024).

The EEOC argues that this deliberateness requirement was abrogated by *Green v. Brennan*, 578 U.S. 547, 560 (2016). We have observed that *Green* "arguably conflicts with the subjective intent requirement still used by this Circuit." *Tchankpa*, 951 F.3d at 816. But we have not yet had an occasion to decide the issue. *Id.* at 816–17.

This case is no different. The district court did not rely on the intent requirement in granting Kroger summary judgment. So that issue is not before us for review. *See id.* at 816 ("*Green*'s importance is a live issue—just not for Tchankpa.").

Intolerability is a high bar. *Tchankpa*, 951 F.3d at 814. It requires working conditions "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.* (quoting *Talley*, 542 F.3d at 1107). Whether intolerable conditions exist is fact-dependent. *Id.* We generally consider, among other things, whether the employee was badgered or harassed by their employer or offered continued employment on less favorable terms. *Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2014). As the district court acknowledged, we also consider whether the employer failed to accommodate the employee—such a failure could worsen working conditions. *See, e.g.*, *Smith*, 376 F.3d at 537; *Talley*, 542 F.3d at 1109; *Tchankpa*, 951 F.3d at 815.

The district court concluded that Yanick's working conditions were not intolerable. Though Yanick argued that Schnepp badgered her and harassed her to step down, the court said Schnepp was only supervising and criticizing Yanick's job performance. Those actions were not enough, the court reasoned, to establish constructive demotion. Yanick's argument that Kroger failed to accommodate her did not move the needle in her favor either because the court held that Yanick's failure-to-accommodate claim failed.

Though our analysis slightly differs, we agree with the district court's conclusion—Yanick did not face intolerable working conditions. Yanick claims three things led to her stepping down. But none of those actions (considered separately or combined) scale the high bar of being "objectively intolerable." *Tchankpa*, 951 F.3d at 814.

To start, Yanick says Schnepp criticized her and accused her of failing to perform her job. Schnepp would come to the bakery department and ask Yanick questions, usually with a critical attitude. Schnepp also called Yanick into her office at least twice to discuss performance issues.

15

But a supervisor's criticism of an employee's job performance, even if the employee thinks it's unfair, is generally insufficient for constructive demotion. *Smith*, 376 F.3d at 534. And even construing the facts in her favor, Yanick has not shown that the criticism she faced was particularly egregious. *See Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 631 (6th Cir. 2018) (a few isolated incidents of criticism not enough). No reasonable jury could find otherwise.

Next up is Kroger's alleged failure to accommodate Yanick's disability. Though we agree a triable issue exists on whether Yanick requested a reasonable accommodation, even if that claim proves meritorious, such a failure could not have made Yanick's working conditions intolerable. In *Talley v. Family Dollar Stores of Ohio*, we emphasized that an employee cannot "assert a claim for constructive discharge every time an employer fails to accommodate her disability." 542 F.3d at 1109. Important to our holding there, and in later cases, was that the employer completely denied the employee's "repeated" accommodation requests. *Id.*; *see Smith*, 376 F.3d at 537–38; *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 303 (6th Cir. 2019). Yanick's case presents only a single accommodation request. Her case thus falls outside the scope of *Talley* and similar cases.

Yanick also posits that Schnepp offered her continued employment on less favorable terms.[3] True, Schnepp did twice offer Yanick the option to step down. When Yanick took Schnepp up on that offer, she ended up in a position with a lower salary and less authority. So this consideration arguably weighs in Yanick's favor. *See Logan v. Denny's, Inc.*, 259 F.3d 558, 572

---

[3] Kroger contends that we can't entertain this argument on appeal because Yanick didn't raise it below. But a review of Yanick's district court briefing suggests the opposite. Yanick argued that Schnepp "caused intolerable circumstances by pressuring [her] to step down from manager to clerk." Resp. to Def.'s Mot. for Summ. J., R.19 at PageID 383. That preserved her argument.

(6th Cir. 2001). But "intolerability is a demanding standard." *Tchankpa*, 951 F.3d at 814. And this one factor, combined with Schnepp's performance criticism and Yanick's single accommodation request, is not enough to compel a reasonable person to resign.

On appeal, Yanick adds one other consideration to the mix: temporal proximity. She argues that the district court glossed over the timing between her telling Schnepp she had cancer or requesting an accommodation and Schnepp badgering her and suggesting she step down. The timing of an employer's actions, however, is generally not a factor when assessing intolerable working conditions. *See Laster*, 746 F.3d at 728. Yanick does not direct us to any cases explaining why it should be here. The first case she cites, *Wojtanek v. Consolidated Container Co.*, did not deal with constructive demotion. No. 09-cv-202, 2011 WL 4036126, at *7 (N.D. Ill. Sept. 12, 2011). Nor did the second—*Rogers v. Henry Ford Health*—which only mentioned using temporal proximity to establish a causal connection. 897 F.3d 763, 776–77 (6th Cir. 2018). Yanick's reliance on temporal proximity therefore does not warrant reversal.

\* \* \*

Without an adverse employment action, Yanick's disability discrimination and retaliation claims fail. We therefore affirm the district court's ruling on these claims.

**2.**

Even if Yanick could show an adverse employment action, her retaliation claim still wouldn't survive summary judgment. As Kroger argues, Yanick failed to exhaust her administrative remedies.[4]

---

[4] This argument, like the one in section III.A.2, was not addressed by the district court. Even so, we exercise our discretion to address it anyway. *See Freed*, 976 F.3d at 741.

Before suing an employer under Title VII, an employee must file a charge with the EEOC. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). Among other things, that charge must "describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). Claims not described in the charge and not "reasonably expected to grow out of" it usually cannot be brought in a lawsuit. *Younis*, 610 F.3d at 361; *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 534 (6th Cir. 2001).

Even construing Yanick's charge liberally, as we must because she filed her charge pro se, *Younis*, 610 F.3d at 361, Yanick doesn't clear that hurdle. To start, Yanick only checked the box for "disability" discrimination—not retaliation. EEOC Charge, R.18-14 at PageID 358. Further, her charge lacks facts that would put the EEOC (or Kroger) on notice that she intended to pursue a retaliation claim. *Younis*, 610 F.3d at 363; *Woodling v. GeoBuild, LLC*, No. 22-3499, 2023 WL 335283, at *2 (6th Cir. Jan. 20, 2023). *Contra Dixon v. Ashcroft*, 392 F.3d 212, 218 (6th Cir. 2004). As explained in her complaint, Yanick's retaliation claim revolves around her reports of discrimination. Yet her EEOC charge mentions no such report. The only other potentially protected activity Yanick mentions is that she took medical leave. Still, that statement alone does not provide sufficient notice for retaliation. Accordingly, a retaliation claim could not reasonably grow out of Yanick's charge.

Yanick's only reference to retaliation with the EEOC comes from her pre-charge inquiry form. In it, Yanick says the reason for her complaint is "Retaliation – I complained to my employer about job discrimination." EEOC Inquiry, R.18-11 at PageID 324; *see also id.* at 326. So that raises the question: is that form also a charge under Title VII?

18

We think not. The Court faced a similar question in *Williams v. CSX Transportation Co.*, 643 F.3d 502, 509–10 (6th Cir. 2011). We noted that a charge must: (1) be verified, (2) sufficiently identify the parties and actions complained of, and (3) suggest that the employee "requests the agency to activate its machinery and remedial processes." *Id.* at 509 (quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)). Like the form in *Williams*, Yanick's inquiry form, though not initially verified, might have become verified once Yanick filed her official charge. *Id.* Her inquiry form also likely contained an adequate description of the parties and facts. Yanick's form, however, does not request enforcement. Nowhere does she ask the EEOC to act or demand damages. *Contra id.* at 510. Instead, Yanick's inquiry was purely informational, which prevents it from being a charge. Yanick therefore did not exhaust her administrative remedies.

## IV. CONCLUSION

For all these reasons, the district court's order is partially affirmed and partially reversed. We remand for proceedings consistent with this opinion.